# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>TRACI DANYEL FALLOW,<br><br>                        Respondent,<br><br>   and<br><br>TROY LYNN FALLOW,<br><br>                       Appellant. | No.  57677-5-II<br><br><br><br>PUBLISHED OPINION |

LEE, P.J. — Troy Fallow appeals a commissioner's order imposing sanctions pursuant to CR 11 based on his counsel's continued objection to a commissioner's authority to hear a contested dissolution trial.  Troy[1] also appeals a superior court order denying a motion for reconsideration, which was entered in response to Troy's motion for revision of the commissioner's ruling imposing sanctions.

Because Troy's counsel advanced an argument without legal basis and failed to conduct a reasonable inquiry into legal authorities, and because the relevant legal authority allows commissioners to preside over a contested dissolution trial, we hold that the commissioner did not err in imposing sanctions.  However, because the superior court issued an order denying a motion for reconsideration instead of an order addressing the motion for revision, the superior court's

---

[1]  This opinion refers to the parties by their first names for clarity.  We intend no disrespect.

order was issued on the wrong legal basis. Therefore, we reverse the superior court's order denying reconsideration and remand for further proceedings consistent with this opinion.

FACTS

Troy and Traci Fallow married in 2004. They separated in 2020, and in 2021, Traci filed for dissolution. Over the course of 2021, Troy and Traci disputed several aspects of their separation, including child support, spousal support, and distribution of assets. In February 2022, the dissolution was set for a one-day, non-jury trial on March 2. At the pretrial conference on February 28, the parties indicated they were not prepared to go to trial.

Trial was re-set for September 30. On September 27, Troy's counsel, Steven McNeill, called the superior court administrator to confirm the judge assigned to the trial. The court administrator informed McNeill that a commissioner[2] had been assigned by the presiding judge.

McNeill told the court administrator that he did not believe a commissioner could hear a "final divorce trial" and "there were no stipulations regarding a court commissioner sitting as a pro tempore Judge." Clerk's Papers (CP) at 238. The court administrator stated that the

---

[2] The assigned commissioner was appointed in 2021. The order appointing the commissioner stated:

> IT IS HEREBY ORDERED that pursuant to the provisions of chapter 2.24.010 and 2.24.040, Revised Code of Washington, Daryl A Rodrigues, be and hereby is appointed as a Court Commissioner . . . and shall qualify as such by taking and subscribing an oath as provided by law. He shall have all the powers of a Court Commissioner as provided by the law of the State of Washington.

Mot. to Suppl. the Rec., Ex. A., (July 12, 202)

2

commissioner was assigned by the superior court presiding judge and that commissioners could hear final dissolution trials.

On September 28, McNeill called Traci's counsel, James Parker, to discuss his reservations about a commissioner being assigned to the trial. According to McNeill, Parker agreed with him that a commissioner could not hear a final dissolution trial. However, Parker suggested that they maintain the trial date and use it instead as a settlement discussion opportunity.

Parker had previously learned on September 23 that a commissioner had been assigned to the trial. According to Parker, when Parker spoke with McNeill, McNeill allegedly did not inform Parker that he intended to object to the commissioner hearing the case; rather, McNeill stated that "he preferred the issue of the commissioner's authority be resolved first," without further explanation. CP at 214.

On September 29, Parker filed Traci's proposed exhibits. McNeill then filed Troy's pretrial statement and proposed exhibits. According to Parker, he understood McNeill's filings to mean that McNeill was actually prepared to proceed to trial despite his initial reservations. According to McNeill, he only filed the pretrial statement and proposed exhibits in response to Parker's submissions.

On September 30, at the start of trial, McNeill raised the issue of the commissioner's authority. When the commissioner asked why McNeill was raising the issue at the commencement of trial, as opposed to before trial, McNeill stated, "I don't know what more I can do in terms of raising the issue." Verbatim Rep. of Proc. (VRP) (Sept. 30, 2022) at 9. Parker suggested that the parties stipulate on the record to the commissioner acting as a judge pro tempore. However,

McNeill stated that he wanted a ruling from the court on the issue of the commissioner's authority first and would then consult with Troy.

The commissioner took a brief recess to research the issue. Upon return, the commissioner concluded that under the Washington State Constitution, it had the authority to proceed with the trial and that its authority was not limited by RCW 2.24.040.[3] However, McNeill continued to object to the commissioner's authority, citing language from the Washington Constitution[4] and RCW 2.24.040(9).[5] Specifically, McNeill took issue with the definition of "'at chambers'" in the Washington Constitution. VRP (Sept. 30, 2022) at 14. McNeill stated, "I couldn't find a definition of what 'at chambers' means. I assume what that means is ex parte, at chambers." VRP (Sept. 30, 2022) at 14.

Because of McNeill's continued objection, the commissioner stated: "I have the authority to conduct this trial under advisement and both parties are going to submit briefing." VRP (Sept.

---

[3] RCW 2.24.040 enumerates 15 specific powers of court commissioners.

[4] The relevant portion of the Washington State Constitution states:

> There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.

WASH. CONST. art. IV, § 23.

[5] RCW 2.24.040(9) provides that court commissioners shall have the authority "[t]o hear and determine ex parte and uncontested civil matters of any nature."

30, 2022) at 16. The commissioner instructed the parties to contact court administration to set another hearing date within the next 10 days to resolve the issue of the commissioner's authority.

After the commissioner ruled, Parker orally moved for attorney fees and sanctions, in part because McNeill's objection to the commissioner's authority was untimely and because Traci had flown to Washington from out of state to participate in the trial. The commissioner determined it would resolve Parker's motion at the next hearing date. McNeill asked to respond to Parker's motion but used the opportunity to again argue about the commissioner's authority.

The commissioner asked the parties to submit briefing by October 7 and to have the matter set for hearing no later than October 14. McNeill then stated:

> I'm surprised [the issue of the commissioner's authority] hasn't been resolved definitively before. I spent hours trying to research this, looking for that—that bullet there that says this is what's going on.
>
> . . . .
>
> . . . I called Thurston County and Thurston County says we don't do trials with commissioners, you know. And I say[], well, why? Well, I don't know. We—we don't do trials with commissioners. And so I don't—and we've never done trials by commissioners here, unless we had an agreement or a judge pro tem.

VRP (Sept. 30, 2022) at 28.

On October 4, Parker filed a written motion for attorney fees, travel expenses for Traci, and sanctions. In the motion, Parker cited a Washington case, *In re Marriage of Lyle*,[6] that directly addressed the issue of the commissioner's authority and the definition of "'at chambers.'" CP at 214. Parker argued that McNeill's position was frivolous because "it is clear that court

---

[6] 199 Wn. App. 629, 398 P.3d 1225 (2017).

commissioners . . . have the authority to conduct all judicial proceedings that are not jury trials." CP at 215.

A hearing was set for October 17. By October 12, McNeill had not filed any briefing, so the court ordered McNeill to submit a brief with authority supporting his position no later than October 14. On October 14, McNeill filed a response to Parker's motion, but did not provide his own briefing regarding the issue of the commissioner's authority. McNeill's response primarily addressed Parker's arguments regarding fees and sanctions. As to the commissioner's authority, McNeill stated only that the "issue can be simply resolved by reference to RCW 2.24.040." CP at 242.

On October 17, during the hearing McNeill maintained his position that a commissioner did not have the authority to hear a final dissolution trial. McNeill argued that the position was not frivolous because the Washington Constitution only allowed commissioners to hear matters "at chambers . . . which essentially prohibits them from hearing all matters that would have been at a trial." VRP (Oct. 17, 2022) at 38. McNeill further argued that dissolutions required jury trials when the Washington Constitution was written. He then asserted that even though jury trials were subsequently dispensed with in dissolution proceedings, RCW 2.24.040(9) limited the type of civil matters a commissioner may hear. Regarding *Marriage of Lyle*, cited by Parker, McNeill stated that it was "only . . . one case." VRP (Oct. 17, 2022) at 41.

The commissioner asked McNeill if he had read *Claypool*,[7] a seminal case regarding the authority of commissioners and which is referenced in *Marriage of Lyle*. McNeill responded, "I

---

[7] *State v. Claypool*, 132 Wash. 374, 232 P. 351 (1925).

don't need to, Judge. The rules were changed in 1973." VRP (Oct. 17, 2022) at 42. Parker then interjected that cases discussing commissioner authority were "easily discovered." VRP (Oct. 17, 2022) at 45.

The commissioner ruled that its prior oral ruling was unchanged—a commissioner possesses the authority to hear a final dissolution trial. The commissioner also stated that travel expenses and attorney fees could be determined at trial. On the issue of sanctions, the commissioner decided to issue a written ruling.

On October 27, the commissioner issued a written order on the motion for fees and sanctions. The written order held that (1) McNeill's objection to the commissioner's authority was untimely; and (2) McNeill's objection and subsequent response was frivolous under CR 11. As a result, the commissioner ordered McNeill to pay attorney fees, along with lost wages and travel expenses for Traci. Additionally, the commissioner sanctioned McNeill in the amount of $750 for violation of CR 11.

On October 28, McNeill filed a motion for revision of the commissioner's order. McNeill cited RCW 2.24.050 and Grays Harbor County Local Court Rule (LCR) 59. On October 31, the superior court denied McNeill's motion. However, the superior court's order denying the motion was titled "Order on Motion for Reconsideration." CP at 259. The order stated:

> THIS MATTER having come upon the Respondent's Motion for Reconsideration dated October 28, 2022, and the Court having reviewed the records and files herein, now therefore
>
> IT IS HEREBY ORDERED that the Motion for Reconsideration is denied without oral argument pursuant to CR59.

CP at 259 (boldface omitted).

7

Troy appeals.[8]

## ANALYSIS

### A.    COMMISSIONER AUTHORITY

Troy argues the superior court erred when it assigned a court commissioner to hear a final

dissolution trial because commissioners have no such authority.  Specifically, Troy argues that

RCW 2.24.040(9) prohibits a commissioner from presiding over a contested dissolution trial, and

none of the enumerated powers in RCW 2.24.040 grant a commissioner the authority to hear

dissolution trials generally.  We disagree.

####    1.    Legal Principles

Court commissioners are an integral part of the Washington court system.  *Marriage of*

*Lyle*, 199 Wn. App. at 632.  "Superior court commissioners derive their powers from our state's

constitution and statute."  *Id.*; *see generally* WASH. CONST. art. IV, § 23; ch. 2.24 RCW.  Article

IV, section 23 of the Washington State Constitution provides:

> There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.

This provision gives commissioners (1) the power to "perform like duties as a judge of the superior

court at chambers," subject to revision by a superior court judge; (2) the power to take depositions;

---

[8]  After the October 17 hearing, the dissolution trial was set for November 1, 2022.  The trial was held before the commissioner.  The commissioner issued a ruling and written opinion on November 28.  Troy does not appeal the outcome of the dissolution trial.

and (3) the power "to perform such other business connected with the administration of justice as may be prescribed by law." WASH. CONST. art. IV, § 23; *see Claypool*, 132 Wash. at 375.

When the Washington Constitution was adopted, the duties of judges "'at chambers'" included "'entertain[ing], try[ing], hear[ing] and determin[ing], all actions, causes, motions, demurrers and other matters not requiring a trial by jury.'" *State v. Goss*, 78 Wn. App. 58, 60, 895 P.2d 861 (1995) (quoting CODE OF 1881, § 2138, p. 368); *accord State v. Karas*, 108 Wn. App. 692, 701-02, 32 P.3d 1016 (2001). Because article IV, section 23 of the Washington Constitution provides that commissioners "shall have authority to perform like duties as a judge of the superior court at chambers," it follows that commissioners have the authority to entertain, try, hear, and determine all actions not requiring a jury trial. *Claypool*, 132 Wash. at 377; *accord Goss*, 78 Wn. App. at 60 ("It follows that a court commissioner appointed under article IV, section 23, has authority to act in any matter not requiring a trial by jury, subject to revision by a superior court judge."); *Marriage of Lyle*, 199 Wn. App. at 632 ("[Commissioners] are conferred with most of the powers of a superior court judge but may not preside over jury trials.").

While the legislature may add to powers enumerated in the constitution, those powers cannot be taken away by legislative enactment. *Claypool*, 132 Wash. at 377; *Olson v. Chase*, 12 Wn. App. 682, 687, 531 P.2d 508 ("The powers of a court commissioner are vested by the constitution. This granted power is supreme; while the legislature has power to add to those specifically set forth in the constitution, so long as those powers pertain to the administration of justice, the legislature cannot take away a constitutional grant of power."), *review denied*, 85

9

Wn.2d 1010 (1975); *Karas*, 108 Wn. App. at 702 ("Thus, Karas's effort to limit a commissioner's authority to those matters expressly set forth in RCW 2.24.040 fails.").

RCW 2.24.040 enumerates specific commissioner powers. One such power is to "act as referee in all matters and actions referred to him or her by the superior court as such, with all the powers now conferred upon referees by law." RCW 2.24.040(4). A referee is a person appointed by the court or a judicial officer with the power "[t]o try an issue of law or of fact in a civil action or proceeding and report thereon." RCW 2.24.060(1). Commissioners may also "hear and determine ex parte and uncontested civil matters of any nature." RCW 2.24.040(9).

Superior courts may adopt local court rules, so long as they are not inconsistent with the superior court civil rules. CR 83(a); *see King County v. Williamson*, 66 Wn. App. 10, 12, 830 P.2d 392 (1992). Often, local court rules address commissioner duties and powers. *See, e.g.*, PIERCE COUNTY SUPER. CT. LOCAL R. (PCLR) 0.4; THURSTON COUNTY SUPER. CT. LOCAL SPECIAL PROCEEDINGS R. (LSPR) 94.02.

Grays Harbor County authorizes commissioners to accept and enter guilty pleas by criminal defendants. GRAYS HARBOR COUNTY SUPER CT. LOCAL CRIM. R. (LCrR) 1.6. Beyond LCrR 1.6, however, the Grays Harbor County local rules do not otherwise specify a commissioner's affirmative duties nor do they prohibit specific duties. *See generally* GRAYS HARBOR COUNTY SUPER. CT. LOCAL COURT RULES. However, the Grays Harbor County local rules provide for the assignment of cases. GRAYS HARBOR COUNTY SUPER. CT. LOCAL CIV. R. (LCR) 40. For instance, "[j]udges may select those cases deemed appropriate for pre-assignment due to length of trial or complexity of issues." LCR 40(g)(1). Further, "[o]nce a case has been

10

pre-assigned, all subsequent matters and proceedings except settlement conferences shall be heard before the assigned judicial officer, if available." LCR 40(g)(4).

Parties dissatisfied with a commissioner's ruling may seek relief through a motion for revision. *Marriage of Lyle*, 199 Wn. App. at 632; RCW 2.24.050. "The right to seek revision permits a litigant appearing before a commissioner to be treated similarly to one appearing before a superior court judge." *Marriage of Lyle*, 199 Wn. App. at 632.

2.      Commissioner Has Authority To Hear A Contested Dissolution Trial

Troy argues that because the commissioner was not appointed pursuant to article IV, section 23 of the Washington Constitution, the commissioner does not have the authority to hear a contested dissolution trial. Troy also argues that because the order appointing the commissioner cites only to RCW 2.24.010 and RCW 2.24.040, those statutes are the only pertinent authority when it comes to the commissioner's powers.

Troy is correct that the order appointing the commissioner did not reference the Washington Constitution. However, the order also stated: "[The Commissioner] shall have all the powers of a Court Commissioner as provided by the law of the State of Washington." Mot. to Suppl. the Rec., Ex. A.

Superior court commissioners derive their power from *both* statute and the Washington Constitution. *Marriage of Lyle*, 199 Wn. App. at 632. Here, although the order appointing the commissioner did not specifically reference the Washington Constitution, it does not—and cannot—negate the broad powers granted by the constitution. *See Karas*, 108 Wn. App. at 702 (rejecting effort to limit a commissioner's authority to only those matters expressly set forth in

RCW 2.24.040). Therefore, Troy's argument that the commissioner did not have the authority to hear a non-jury dissolution trial because the order appointing the commissioner failed to reference the constitution is unpersuasive.

Commissioners have the authority under article IV, section 23 of the Washington Constitution, to entertain, try, hear, and determine all actions not requiring a jury trial. *Claypool*, 132 Wash. at 375-77. Dissolutions are civil actions where "trial by jury is dispensed with." RCW 26.09.010(1). Therefore, dissolution trials are non-jury trials, and commissioners have the authority to preside in those proceedings.

Troy also argues that RCW 2.24.040(9) limits what authority a commissioner has as it pertains to civil actions. *See* RCW 2.24.040(9). However, while RCW 2.24.040(9) refers to a commissioner's authority to hear and determine ex parte and uncontested civil matters, it does not preclude a commissioner's ability to hear other matters. Here, Troy and Traci's dissolution trial is a contested, non-jury civil action, and because all parties appeared for a trial, it is not ex parte. *See* RCW 26.09.010(1). Therefore, based on the circumstances, RCW 2.24.040(9) simply does not apply.[9]

RCW 2.24.040(4), on the other hand, provides that commissioners have the authority to "act as referee in *all matters and actions* referred to him or her by the superior court as such, with all the powers now conferred upon referees by law." (Emphasis added). A referee has the power to "try an issue of law or of fact in a civil action." RCW 2.24.060(1). Here, when the Fallows'

---

[9] Regardless, Washington case law establishes that legislative enactments cannot curtail the broad powers granted by the constitution. *See, e.g.*, *Karas*, 108 Wn. App. at 702.

dissolution proceeding was noted for trial, the superior court presiding judge transferred the matter to the commissioner. The parties do not dispute that the presiding judge assigned—or in other words, referred—the Fallows' dissolution trial to the commissioner. Therefore, based on the plain language of RCW 2.24.040(4), the commissioner had the authority to act as a referee in the matter. *See* RCW 2.24.040(4).

Additionally, the presiding judge appears to have pre-assigned the matter to the commissioner pursuant to Grays Harbor County LCR 40(g). *See* LCR 40(g)(1). The pre-assignment of the matter to a commissioner is not precluded by the plain language of LCR 40(g), which refers to "the assigned *judicial officer*," and does not specify "judge." LCR 40(g)(4) (emphasis added). There is no dispute that a commissioner is a judicial officer.

Article IV, section 23 of the Washington Constitution, RCW 2.24.040(4), and LCR 40(g) conferred authority to the commissioner to preside over the contested dissolution trial. Thus, the non-jury dissolution trial fell within the commissioner's authority.

B.      CR 11 SANCTIONS

Troy argues that sanctions against McNeill pursuant to CR 11 were inappropriate because McNeill's objection to the commissioner's authority was not frivolous. We disagree.

1.      Legal Principles

CR 11 provides that any filings by a party or attorney must, to the best of the party's or attorney's knowledge, be "well grounded in fact"; "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law"; and "not interposed for any improper purpose, such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation." CR 11(a). "The purpose of CR 11 is to deter baseless filings and curb abuses of the judicial system." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). A baseless filing is one that is not well grounded in fact or warranted by existing law or a good faith argument to change the law. *Id.*

The movant for CR 11 sanctions bears the burden of justifying the request for sanctions. *Id.* "The court applies an objective standard to determine 'whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified.'" *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 190, 244 P.3d 447 (2010) (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992)). "To impose sanctions for a baseless filing, the trial court must find not only that the claim was without a factual or legal basis, but also that the attorney who signed the filing did not conduct a reasonable inquiry into the factual and legal basis of the claim." *West v. Wash. Ass'n of County Offs.*, 162 Wn. App. 120, 135, 252 P.3d 406 (2011).

We review the imposition of CR 11 sanctions for an abuse of discretion. *Stiles v. Kearney*, 168 Wn. App. 250, 260, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Id.*

2.      Sanctions Appropriate

The commissioner imposed sanctions for frivolousness based on McNeill's continued objection to and argument about the commissioner's authority. McNeill claimed that he "spent hours trying to research" the issue and could find nothing that spoke definitively on the commissioner's authority. VRP (Sept. 30, 2022) at 28. Despite McNeill's claim, the record shows

14

that the commissioner was able to find a legal basis supporting its authority to hear the dissolution trial during a brief recess. And despite the commissioner ruling that it had authority to proceed with the dissolution trial based on the Washington Constitution and RCW 2.24.040, McNeill continued to argue that the commissioner did not have the authority, prompting the commissioner to direct the parties to submit briefing on the issue. Further, despite the order to submit briefing, McNeill failed to file any briefing regarding the commissioner's authority, and then only filed a response after being ordered to do so by the court. In the response, McNeill cited only to RCW 2.24.040(9) as limiting a commissioner's authority to hear a dissolution trial. While McNeill wrote that *Marriage of Lyle* "represents a recent restatement of what is well settled law," the case was "just a starting point." CP at 241. However, McNeill did not analyze *Marriage of Lyle*, let alone mention any other authority discussing the commissioner's authority.

The commissioner's written order on sanctions and attorney fees listed and described several cases that the commissioner had quickly found "following [the] rudimentary legal engine search phrase 'Commissioner 2.24.040 at chambers.'" CP at 252 (internal quotation marks omitted). The commissioner's written order concluded that McNeill's objection to the commissioner's authority was baseless and that imposing sanctions was appropriate because McNeill's objection "was not warranted by existing law;" "no good-faith argument for the extension of existing law was made;" and although McNeill claimed he spent hours researching the issue, "McNeill failed to conduct an inquiry reasonable under the circumstances." CP at 254.

The record shows that the commissioner conducted an appropriate CR 11 analysis by hearing argument from both parties, taking the issue under advisement, and then conducting its

15

own research prior to issuing the written order. *See Eller*, 159 Wn. App. at 190. Based on McNeill's continued advancement of an argument without conducting a reasonable inquiry and the apparent ease with which the commissioner found legal authorities supporting the proposition that commissioners may hear contested dissolution trials, the commissioner did not abuse its discretion in imposing CR 11 sanctions.[10]

C.      MOTION FOR REVISION

Troy argues that the superior court erred when it denied a motion for reconsideration when the motion was one for revision. We agree.

1.      Legal Principles

All acts and proceedings by court commissioners are subject to revision by the superior court. RCW 2.24.050. The superior court reviews motions for revision de novo. *Marriage of Lyle*, 199 Wn. App. at 632. "When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's." *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).

Motions for reconsideration, on the other hand, are governed by CR 59. Under CR 59, "[o]n the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties." CR 59(a). Motions for reconsideration may be granted in cases of irregular proceedings, misconduct, errors, and newly discovered evidence, among other circumstances. CR

---

[10] Furthermore, Troy appeals only the order on the motion for sanctions and fees. Troy does not challenge the underlying dissolution proceeding, which later took place. Because Troy challenges only the sanctions, but not the actual dissolution proceeding, Troy appears to implicitly acknowledge that the commissioner had the authority to hear the final dissolution trial.

59(a). We review a superior court's decision to grant or deny a motion for reconsideration for abuse of discretion. *In re Marriage of McCann*, 4 Wn. App. 2d 896, 915, 424 P.3d 234 (2018).

Commissioner decisions are not subject to reconsideration; they are subject to revision. RCW 2.24.050; WASH. CONST. art. IV, § 23.

Grays Harbor County LCR 59 addresses both reconsideration and revision. LCR 59. As it pertains to revision, LCR 59 provides:

> (i) A party moving for revision of a ruling by a Court Commissioner shall comply with RCW 2.24.050.
>
> (ii) A motion for revision shall be based upon entry of written findings, conclusions and an order by the Court Commissioner. Oral rulings not reduced to written orders are not the proper subject for a motion for revision.
>
> (iii) The original motion and supporting materials and proof of service upon all parties, along with a bench copy for the assigned judge, will be filed. If a non-moving party wishes to respond, that response is due ten days after being served with the initial motion.
>
> (iv) At the judge's discretion the moving party may be required to provide a written transcript of part or all of the hearing held before the Court Commissioner.
>
> (v) The assigned judge shall review the pleadings and either rule on the motion or seek additional input from the parties.

LCR 59(e)(5).

On motions for reconsideration, LCR 59 states:

> A motion for reconsideration shall be submitted on briefs and affidavits only, without oral argument, unless the trial Judge requests oral argument. The moving party shall file the motion and all supporting affidavits, documents and briefs at the same time, and on the date of filing, serve on or mail a copy thereof to opposing counsel, and deliver a copy thereof to the trial Judge which copy shall show the date of filing. The trial Judge shall either deny the motion and advise counsel of the ruling or request responding briefs and direct the movant to note the motion for hearing.

LCR 59(e)(4).

>    2.    Superior Court Erred

Troy filed a motion for revision, pursuant to RCW 2.24.050 and LCR 59, of the commissioner's order on the motion for sanctions and attorney fees. Troy's motion was titled "Motion for Revision of Commissioner's Ruling." CP at 256. Further, the motion stated that the superior court's standard of review was de novo. Three days later, the superior court entered an order "on motion for *reconsideration*." CP at 259 (emphasis added). The order, in its entirety, stated:

> THIS MATTER having come upon the Respondent's Motion for Reconsideration dated October 28, 2022, and the Court having reviewed the records and files herein, now therefore
>
> IT IS HEREBY ORDERED that the Motion for Reconsideration is denied without oral argument pursuant to CR59.

CP at 259 (boldface omitted).

Here, the record is clear that Troy appropriately filed a motion for revision of the commissioner's ruling. Troy cited the correct legal authorities, RCW 2.24.050 and LCR 59, both of which address revision. Troy also provided the correct standard of review—de novo—and he properly titled his motion as a motion for revision. Given this, the record is not clear as to why the superior court then issued an order on a motion for *reconsideration*.[11] The superior court

---

[11] To the extent that the superior court confused the civil rules with the Grays Harbor County local court rules and incorrectly assumed that references to "LCR 59" meant CR 59, we emphasize the importance of superior court judges refreshing themselves on their own local rules.

should be well aware that commissioner rulings are not reviewed as motions for reconsideration. RCW 2.24.050.

Traci argues that "the order makes it clear that the motion was denied after the court 'reviewed the record and files herein,'" and that accordingly the superior court complied with RCW 2.24.050. Br. of Resp't at 5 (quoting CP at 259). However, the fact that the superior court "reviewed the record and files herein" gives no indication of whether the superior court reviewed the motion as one for revision or one for reconsideration. RCW 2.24.050 provides that "revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner." LCR 59(e)(5)(ii) further states, "A motion for revision shall be based upon entry of written findings, conclusions and an order by the Court Commissioner." CR 59 allows a superior court to grant a motion for reconsideration based either on the record or on facts outside the record. CR 59(f).

Furthermore—and critically—motions for revision are reviewed under an entirely different standard than motions for reconsideration. The face of the order would suggest that that the superior court reviewed the motion as one for reconsideration under an abuse of discretion standard, which is far less stringent than the de novo standard of motions for revision.

Because Troy filed a motion for *revision* and the superior court then issued an order on a motion for *reconsideration*, without any acknowledgment that it was reviewing a commissioner's ruling, the superior court issued an order on the wrong basis. Because the superior court's order was issued on the wrong basis, the superior court erred, and we reverse the superior court's order

on reconsideration and remand for the superior court to issue an order on a motion for revision in accordance with RCW 2.24.050, LCR 59, and this opinion.

D.     ATTORNEY FEES ON APPEAL

Troy requests attorney fees based on Parker's alleged violations of CR 11 and RPC 3.3. Troy argues that Parker's conduct was "unprofessional" and that Parker "should be liable for the entire amount of costs and fees incurred in the bringing of this appeal."  Br. of Appellant at 13. Based on her briefing, it is unclear whether Traci requests attorney fees based on McNeill's violations of CR 11 and RPC 3.3.[12]

1.     CR 11 Fees

As discussed in Section B above, "CR 11 deals with two types of filings: baseless filings and filings made for improper purposes." *Stiles*, 168 Wn. App. at 261.  To impose fees based on CR 11, "the trial court must find not only that the claim was without a factual or legal basis, but also that the attorney who signed the filing did not conduct a reasonable inquiry into the factual and legal basis of the claim." *West*, 162 Wn. App. at 135.  The movant for CR 11 sanctions bears the burden of justifying the request for sanctions. *Bldg. Indus. Ass'n of Wash.*, 152 Wn. App. at 745.

Here, Troy appears to take issue with Parker's alleged failure "to acknowledge the conversation of the attorneys which as an officer of the Court is improper" and that Parker

---

[12]  Neither party requests fees as the prevailing party under RAP 18.1 or any other appellate rule. Indeed, Traci's brief goes so far as to state, "This request is *not based* on RAP 18.9(a) or any other basis for an award of appellate attorney fees."  Br. of Resp't at 6 (emphasis added).

"presented case law that was not disclosed to opposing counsel."[13]  Br. of Appellant at 13.

However, Troy does not argue that Parker made any baseless filings or improper filings.  CR 11 permits sanctions based on *filings*.  *Eller*, 159 Wn. App. at 191.  Because there is no argument regarding baseless or improper filings, we decline to award fees to Troy based on CR 11.

To the extent Traci also requests attorney fees based on CR 11, we decline to award such fees to Traci.  Here, even though Traci prevailed on the issue of the commissioner's authority, Traci did not prevail on the appeal of the superior court's order on the motion for reconsideration.  Because we hold that the superior court erred when it issued an order on the motion for reconsideration, Troy's appeal was not baseless or improper.  Therefore, we decline to award attorney fees to Traci based on CR 11.

2.      RPC 3.3 Fees

RPC 3.3 addresses a lawyer's duty of candor to the court.  RPC 3.3 provides that a lawyer shall not knowingly "make a false statement," "fail to disclose a material fact," fail to disclose legal authority directly adverse to the lawyer's position, or offer false evidence.  RPC 3.3(a).

Here, there is insufficient information in the record to determine if McNeill or Parker violated RPC 3.3 such that it can be a basis for the award of fees.  Even assuming that a violation of RPC 3.3 can be a basis to award fees, we decline to award attorney fees based on purported violations of RPC 3.3.

---

[13] We note that RPC 1.1 requires counsel to provide *competent* representation to a client.  "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  RPC 1.1.  If McNeill failed to find applicable case law, he should reflect upon his own thoroughness and preparation for competent representation rather than blame Parker.

No. 57677-5-II

CONCLUSION

We hold that the commissioner did not err in imposing sanctions. However, because the superior court issued an order denying a motion for reconsideration instead of an order addressing the motion for revision, the superior court's order was issued on the wrong legal basis. Therefore, we reverse the superior court's order on reconsideration and remand the order to the superior court for further proceedings in accordance with this opinion.

Lee, J.

We concur:

Veljacic, A.C.J.

Che, J.

22